# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 1, 2012

No. 11-20325

Lyle W. Cayce
Clerk

ROGERS SMITH, Individually and as Heirs of the Estates of Rogers Smith III, Deceased, and Rekesha Hopkins, Deceased; WINONA SMITH, Individually and as Heirs of the Estates of Rogers Smith III, Deceased, and Rekesha Hopkins, Deceased; GEORGIA RANDLE, as Next Friend of K.R. a Minor, Individually and as Heirs of the Estate of Kaven Randle, Deceased; KARRY BROWN, as Next Friend of K.R. a Minor, Individually and as Heirs of the Estate of Kaven Randle, Deceased; MARGARET RANDLE, as Next Friend of K.R. a Minor, Individually and as Heirs of the Estate of Kaven Randle, Deceased; JEREMY VEAZIE, as Next Friend of K.R. a Minor, Individually and as Heirs of the Estate of Kaven Randle, Deceased; TERRIE GREEN, as Next Friend of K.R. a Minor, Individually and as Heirs of the Estate of Kaven Randle, Deceased; SCHRHONDA RANDLE, Individually and as Heirs of the Estate of Kaven Randle, Deceased,

Plaintiffs - Appellants

PHIL JACKSON, JR.

Intervenor Plaintiff - Appellant

v.

ROBIN AMERICA, INC., doing business as Subaru-Robin; FUJI HEAVY INDUSTRIES USA, INC.; FUJI HEAVY INDUSTRIES LTD.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:08-cv-03565

No. 11-20325

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This products liability action arises from the deaths of Rogers Smith III, Rekesha Hopkins, and Kaven Randle ("decedents") from carbon monoxide poisoning. In the aftermath of Hurricane Ike, sometime between September 13th and September 18th of 2008, decedents operated a Black Max 6560 portable generator manufactured by Powermate Corporation inside a closed garage attached to a one-story home in Houston. At some point during this period, carbon monoxide emissions from the generator killed decedents. Several survivors of decedents appeal the district court's grant of summary judgment to the defendant corporation that manufactured the generator's engine under the component parts doctrine, adopted by the Texas Supreme Court. With limited exceptions, that doctrine shields suppliers of component parts — as opposed to manufacturers of finished consumer products — from liability in products liability actions. Because we conclude that the district court correctly determined that, under the component parts doctrine, the engine manufacturer had no duty to the decedents, we AFFIRM the grant of summary judgment.

## BACKGROUND

Plaintiffs-Appellants in this action ("plaintiffs") are various survivors of the decedents. Defendants-Appellees (collectively "Fuji" or "defendants") are Fuji Heavy Industries, the Japanese manufacturing company that built the generator engine and several subsidiaries including Robin America, Inc., which distributes Fuji's small engines in the United States. Plaintiffs brought state law claims for negligence, negligent misrepresentation, wrongful death, products

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20325

defects, and survivorship damages against Fuji, Powermate,[1] and others. There is no dispute that Fuji manufactured the generator engine and supplied it to Powermate. The complaint alleged, inter alia, that Fuji breached duties owed to decedents by failing to adequately warn foreseeable users of the inherent risks associated with using the generator; failing to use ordinary care in providing adequate warning labels; and designing and marketing a defective generator that was unreasonably dangerous for its intended use.

After discovery, Fuji moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). The district court determined that Fuji was not the manufacturer of the generator but merely of the engine as a component part. The district court further concluded that Fuji had no duty to decedents under the component parts doctrine set forth in the Restatement (Third) of Torts: Products Liability § 5 (hereafter Restatement (Third)), and adopted by the Texas Supreme Court, whereby a component manufacturer only has a duty to warn if (1) the component itself is defective or (2) if the component manufacturer actively participated in integrating the component into the final product. Accordingly, the district court granted Fuji's motion for summary judgment. Plaintiffs timely appealed.

**STANDARD OF REVIEW**

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the trial court. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). The court views all evidence in the light most favorable to the non-moving party and draws all

---

[1] Powermate was dismissed from the suit after settling with plaintiffs.

reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *DirectTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by . . . affidavits[,] . . . depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414 (2006). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). This court may affirm the district court's grant of summary judgment on any grounds supported by the record. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011).

Texas law controls this diversity action, and in applying Texas law, this court "must do that which [it] think[s] the Texas Supreme Court would deem best." *Calbillo v. Cavendar Oldsmobile, Inc.*, 288 F.3d 721, 729 (5th Cir. 2002) (brackets and internal quotation mark omitted). In applying Texas law in this area, this court has noted that "[t]he Texas Supreme Court has long looked to the *Restatement of Torts* as an influential guide in products liability law, and has recently heavily relied on the refinements in such law reflected in *Restatement*

No. 11-20325

*Third, Torts: Products Liability.*" *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 334 (5th Cir. 1998); *see also Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 683-85 (Tex. 2004) (applying Restatement (Third) § 5, as anticipated in *Cimino*, 151 F.3d at 334).

## DISCUSSION

Under Texas law, "[i]n order to recover for an injury on the theory of products liability, the plaintiff bears the burden of proving that (1) the defendant placed a product into the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between that condition and the plaintiff's injuries or damages." *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 479 (Tex. App. 2007) (citing *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978)). "A product may be unreasonably dangerous . . . because of a failure to provide adequate warnings or instructions," known as a "marketing defect." *Id.* at 480 (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997); *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995); *Turner v. Gen. Motors Corp.*, 584 S.W.2d 844, 847 (Tex. 1979)). "A marketing defect is proven when the evidence shows that a defendant fails to warn of a product's potential dangers, when warnings are required, and that the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *Id.* (citing, inter alia, *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 377 (Tex. 1984)). "The elements of a marketing defect cause of action are (1) a risk of harm must exist that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product, (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed, (3) the product has a marketing defect, (4) the lack of instructions or warnings renders the product unreasonably dangerous to the ultimate user or consumer

of the product, and (5) the failure to warn or instruct causes the user's injury." *Id.* (citing *Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 578 (Tex. App. 2004)).

The Texas Supreme Court has explained that "a defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. . . . Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." *Grinnell*, 951 S.W.2d at 426 (citations omitted). "In Texas, . . . whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question." *Ford v. Cimarron, Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000). Accordingly, in order to ascertain whether a Texas tort plaintiff can survive a summary judgment motion in which the defendant argues it owed no legal duty to the plaintiff, the court "must ascertain whether [the plaintiff] proffered evidence raising a material fact issue as to whether" such a duty existed. *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 543 (5th Cir. 2005).

Here, plaintiffs argue that the district court erred in concluding that defendants had no duty to provide warnings as a matter of law. Plaintiffs argue that Fuji had a duty to warn decedents of the dangers of carbon monoxide poisoning associated with operating a portable generator in an attached garage because Fuji either (1) manufactured the generator, rather than merely supplying the engine as a component part; (2) had a duty as a component part supplier because the engine was defective and Fuji actively participated in integrating the engine into the final generator; or (3) assumed a duty to warn by placing inadequate warnings on the engine.

## I. Whether Fuji Manufactured the Generator

Plaintiffs argue that the component parts doctrine does not apply because Fuji owed decedents a duty as the manufacturer of the generator itself. Plaintiffs argue that Fuji should be considered the manufacturer of the

generator because the engine essentially is the generator; Fuji's brand name "Subaru" is prominently displayed on the generator, creating a presumption that Subaru is the manufacturer under the "branded car doctrine"; and Fuji actively worked with Powermate to such a high degree in the design and integration process of the engine, that Fuji should be considered to be the manufacturer. These arguments lack merit.

First, plaintiffs argue that the engine was a final, completed product designed for use as a generator.  However, plaintiffs fail to point to any probative evidence that Fuji manufactured the generator. Rather, all the record evidence indicates that Powermate manufactured the generator, incorporating the Fuji engine as a component part.  The affidavits and depositions by current and former Powermate and Fuji executives all indicated as much.  For instance, former Powermate Vice President Tom Graber averred that "Powermate included component engines from a number of different manufacturers, including from [Fuji], Honda, and others[,] . . . [and] integrated the component engines, along with all other component parts from other component manufacturers, into the generator to assemble a final product for sale to the public."  Plaintiffs fail to point to any contrary evidence creating a genuine issue of fact as to whether Fuji, rather than Powermate, manufactured the final generator product.  *See Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 332 (5th Cir. 1998) ("Some components, such as raw materials, valves, or switches, have no functional capabilities unless integrated into other products.  Other components, such as a truck chassis or a multi-functional machine, function on their own but still may be utilized in a variety of ways by assemblers of other products." (emphasis added) (quoting Restatement (Third) § 5 cmt. a, which the court correctly predicted the Texas Supreme Court would adopt)); *Ranger*, 254 S.W.3d at 481-85 (rejecting plaintiff's argument that conveyor manufactured by defendant was not a component of "larger bale-handling system" because

defendant's "conveyors stood alone and . . . their only purpose was to act as conveyors," and instead concluding that defendant "had no duty to warn of the dangers of the larger system . . . because the conveyor was a component of the larger bale-handling system" (internal quotation mark omitted)); Restatement (Third) § 5 cmt. d ("Product components include products that can be put to different uses depending on how they are integrated into other products. For example, . . . an engine for industrial machines may be adapted to a variety of different industrial uses.").

Second, plaintiffs argue that, under the "branded car doctrine," Fuji is presumed to be the manufacturer of the generator because the Fuji brand name "Subaru" is prominently displayed on the generator. "Under the branded car doctrine, evidence that the name of a corporation or individual is printed on the side of the vehicle raises a presumption that the party is the owner of the vehicle." *Better Beverages, Inc. v. Meschwitz*, 643 S.W.2d 502, 504 (Tex. App. 1982). Texas courts have "extend[ed] the branded car doctrine to apply to cases involving identification of the manufacturer" of a product. *Id.* However, this presumption "is not conclusive, . . . and can be rebutted by evidence to the contrary." *Id.* (citing *Maintenance & Equipment Contractors v. John Deere Co.*, 554 S.W.2d 28 (Tex. Civ. App. 1977); *accord Mobley v. Moulas*, 468 S.W.2d 116, 119 (Tex. Civ. App. 1971) ("[T]he [branded car] doctrine merely creates a rebuttable presumption . . . which ceases to have effect, application or function upon the introduction of direct and positive evidence establishing the contrary."). Here, the record evidence is sufficient to rebut a presumption arising under the branded car doctrine. *See Better Beverages*, 643 S.W.2d at 504 (determining that defendant soda company rebutted presumption arising from presence of its trademark on bottle by evidence showing separate company manufactured soda purchased by plaintiff); *Mobley*, 468 S.W.2d at 119 (determining presumption

rebutted by evidence establishing that bus was owned and operated by company other than defendant although defendant's name was on bus).

Finally, plaintiffs argue that Fuji's level of involvement in working with Powermate rises to such a degree that Fuji should be considered the manufacturer of the generator. However, plaintiffs' contentions regarding the extent of Fuji's collaboration with Powermate are properly analyzed under the "substantial participation" exception to the component parts doctrine, *see* Restatement (Third) § 5(b), which we will address below.

## II. *Application of the Component Parts Doctrine*

In *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681 (Tex. 2004), the Texas Supreme Court adopted the component parts doctrine, whereby "if the component-part manufacturer does not participate in the integration of the component into the finished product, it is not liable for defects in the final product if the component itself is not defective." *Id.* at 683 (citing, inter alia, Restatement (Third) § 5). Section 5 provides:

> One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:
>
> (a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or
>
> (b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and
>
> (b)(2) the integration of the component causes the product to be defective, as defined in this Chapter; and
>
> (b)(3) the defect in the product causes the harm.

Restatement (Third) § 5. Plaintiffs argue that the component parts doctrine does not shield Fuji from liability on the alternative grounds that Fuji "substantially participate[d] in the integration of the [engine] into the design of the [generator]"

and that the "component [engine] was defective in itself." *See id.* We address these arguments in turn and determine that the summary judgment record does not create a genuine issue of material fact as to either contention.

First, plaintiffs argue that the evidence creates a genuine issue of material fact as to whether Fuji actively participated in the integration of its engine into the generator. Plaintiffs argue that Fuji actively participated in integration by designing the engine specifically for the generator and sending its engineers to Powermate's facilities to work hand-in-hand in the design and integration process. We also consider here those portions of the record plaintiffs reference in their argument that Fuji's allegedly close relationship with Powermate means Fuji manufactured the generator.

The summary judgment evidence does not give rise to a genuine issue of fact as to whether Fuji substantially participated in the integration of the engine into the design of the generator, within the meaning of Restatement (Third) § 5(b)(1), which the Texas Supreme Court would look to in addressing the matter. *See Cimino*, 151 F.3d at 334; *Bostrom Seating*, 140 S.W.3d at 683. The pertinent evidence is as follows. Graber averred: "Powermate included component engines from a number of different engine manufacturers, including from [Fuji], Honda, and others. . . . [Fuji] . . . w[as] not involved with Powermate in a joint venture with respect to the sale of Powermate generators. Powermate integrated the component engines, along with all other component parts from other component manufacturers, into the generator to assemble a final product for sale to the public. Generally, [Fuji] would provide mechanical and technical assistance to ensure that [Fuji]'s component engines operated as designed when mounted. However, where given, this assistance was minimal[] . . . ." Brad Murphy, Robin America's Vice President of Sales and Marketing, testified that a Fuji engineer visited Powermate's "facilities" in order to answer "technical questions" such as questions about "the power that the engine produces and . . .

how it will interact with . . . [Powermate's] product." Finally, Hitoshi Taguchi, a Fuji Corporate Representative, testified that the engine here was designed "according to [Powermate's] specifications[] . . . in which the fuel tank does not come with the engine," whereas Fuji's general purpose engines generally come with their own fuel tank.

This evidence does not create a genuine issue of fact as to whether Fuji substantially participated in integrating its engine into the generator design. Several illustrations from the commentary to § 5 are instructive in determining whether the level of participation indicated by the evidence here is sufficient to subject Fuji to liability under § 5(b):

> *Substantial participation in the integration of the component into the design of another product.* When the component seller is substantially involved in the integration of the component into the design of the integrated product, the component seller is subject to liability when the integration results in a defective product and the defect causes harm to the plaintiff. Substantial participation can take various forms. The manufacturer or assembler of the integrated product may invite the component seller to design a component that will perform specifically as part of the integrated product or to assist in modifying the design of the integrated product to accept the seller's component. Or the component seller may play a substantial role in deciding which component best serves the requirements of the integrated product. When the component seller substantially participates in the design of the integrated product, it is fair and reasonable to hold the component seller responsible for harm caused by the defective, integrated product. A component seller who simply designs a component to its buyer's specifications, and does not substantially participate in the integration of the component into the design of the product, is not liable within the meaning of Subsection (b). Moreover, providing mechanical or technical services or advice concerning a component part does not, by itself, constitute substantial participation that would subject the component supplier to liability.

Restatement (Third) § 5 cmt. e; *see also Toshiba Int'l*, 152 S.W.3d at 778 (applying this comment). None of these illustrations are analogous to the circumstances evidenced here.

Rather, all the evidence indicates that the engine at issue was a general multi-purpose small engine of a kind that Fuji sold to various manufacturers, similar to other engines that Powermate purchased from Fuji, Honda, and other engine manufacturers for use in Powermate generators. The evidence indicates that Fuji provided the engine to Powermate without its own fuel tank, pursuant to Powermate's specifications, but that this was the only sense in which the engine was designed or built to Powermate's specifications. The Restatement explains that "[a] component seller who simply designs a component to its buyer's specifications, . . . is not liable within the meaning of [§ 5](b)." *Id.* Whatever the extent of any technical advice Fuji engineers may have made available to Powermate — which the record indicates was minimal — "providing mechanical or technical services or advice concerning a component part does not, by itself, constitute substantial participation that would subject the component supplier to liability." *Id.*

Moreover, plaintiffs' argument fails even assuming that Fuji substantially participated in integrating the engine within the meaning of § 5(b)(1). In order to show that a component part maker is subject to liability under § 5(b), a plaintiff must show not only that the component part maker "substantially participate[d] in the integration of the component into the design of the product," but also, inter alia, that "the integration of the component cause[d] the product to be defective." Restatement (Third) § 5(b)(1)-(3); *see also id.* § 5 cmt. f ("The mere fact that the component seller substantially participates in the integration of the component into the design of a product does not subject the seller to liability unless the integration causes the product to be defective . . . . The component seller is not liable for harm caused by defects in the integrated

product that are unrelated to the component."). Here, plaintiffs do not even argue that the integration of the engine into the design of the generator had any effect on the nature of the warnings that Powermate placed on the generator, and point to no evidence going to this point, and our review of the record indicates that no genuine issue of fact exists with respect to this requirement. Rather, Graber's uncontroverted affidavit stated that "Powermate did not fail to place applicable warnings on its generators or . . . modify or change its own warnings based on" its use of Fuji engines. Thus, plaintiffs fail to demonstrate the existence of a genuine fact issue as to a necessary factual predicate to their "substantial participation" argument. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) ("To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.").

Plaintiffs argue in the alternative that Fuji had a duty under the "defective component" exception to the component parts doctrine. *See* Restatement (Third) § 5(a). They contend that the engine had a design defect that rendered it unreasonably dangerous for its intended use because it was not equipped with an automatic cut-off switch to shut down the engine when carbon monoxide levels were building to an unsafe level or a carbon monoxide detection system.

Under Texas law, "[w]hen a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that (1) there was a safer alternative design and (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery." *Hunter v. Ford Motor Co., Inc.*, 305 S.W.3d 202, 209 (Tex. App. 2009) (citing Tex. Civ. Prac. & Rem. Code § 82.005(a)(1), (b)).[2]

---

[2] Section § 82.005 provides in relevant part:
(a) In a products liability action in which a claimant alleges a design defect, the

No. 11-20325

Plaintiffs have failed to point to any summary judgment evidence creating a genuine issue of fact as to this question. The only portions of the record discussing such devices do nothing to evidence that such devices "w[ere] economically and technologically feasible at the time the [engine] left [Fuji's] control," *see* Tex. Civ. Prac. & Rem. Code § 82.005(b)(1), nor that a generator engine without such a device is defective. Plaintiffs point to an October 26, 2006 U.S. Consumer Products Safety Commission ("CPSC") staff report as evidencing the safety benefits of such devices and the viability of building them into portable generators. The only page of that report addressing the devices plaintiffs contend were required indicates that "[i]nterlocking or [a]uto [s]hutoff [d]evices" are "[s]ensors [that] shutoff [sic] generator[s] if CO buildup is detected." The report states that "CPSC staff demonstrated proof-of concept[3] for two approaches": (1) "[d]etect CO in vicinity of operating generator" with a "CO sensor mounted on generator"; and (2) "[d]etect CO where occupants are located" with a "CO sensor in home with wireless connection to generator." However, the report also alludes to remaining problems with the feasibility of such devices, referring to a need to "[a]ddress technical and human factors issues" with such

---

burden is on the claimant to prove by a preponderance of the evidence that:
  (1) there was a safer alternative design; and
  (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.
(b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:
  (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
  (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.
Tex. Civ. Prac. & Rem. Code § 82.005(a), (b).

[3] "Proof of concept" refers to "evidence (usually deriving from an experiment or pilot project) demonstrating that a design concept, business idea, etc., is feasible[] [or] a piece of such evidence." Oxford Eng. Dict. (Online), "proof of concept."

14

devices, including issues involving "[s]ensor reliability and durability," "[l]ocating in-home sensors in proper locations," and the risk of creating a "[f]alse sense of security." Viewing this document in the light most favorable to plaintiffs, there is simply no indication that the CPSC staff's standard for "proof of concept" aligns with the feasibility requirements of Texas products liability law. *See* Tex. Civ. Prac. & Rem. Code § 82.005. Moreover, the 2006 report postdates the 2005 manufacture of the engine at issue,[4] and the report refers to auto shutoff devices "mounted on [a] generator," indicating that the device at issue would, logically, be an additional component of a complete generator, rather than a sub-component of the generator's component engine. Thus, the report does not raise a genuine issue of fact as to whether a component engine made in 2005 was defective without an automatic shutoff device.

Accordingly, plaintiffs have not shown the existence of a material fact as to whether Fuji is subject to liability under the defective component exception to the component parts doctrine. *See, e.g.*, *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995) ("Because [plaintiff] offered no evidence of a safer design for a loader that could perform the same tasks as the Caterpillar model 920, we hold that this product is not defectively designed as a matter of law.").

Because the record does not contain evidence creating a genuine issue of fact regarding either of plaintiffs' arguments that the component parts doctrine does not apply, the district court was correct to grant Fuji's motion for summary judgment on that basis.

## CONCLUSION

The summary judgment evidence, viewed in the light most favorable to plaintiffs, shows that there is no genuine issue as to any material fact and that

---

[4] *See* Tex. Civ. Prac. & Rem. Code § 82.005(b)(2) (requiring an inquiry into feasibility of an alternative design "at the time the product left the control of the manufacturer").

the movants are entitled to a judgment as a matter of law.  Accordingly, the district court's summary judgment in favor of the defendants is AFFIRMED.