# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 14-31169

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 26, 2016

Lyle W. Cayce
Clerk

KALE FLAGG,

      Plaintiff - Appellant

v.

STRYKER CORPORATION; MEMOMETAL INCORPORATED, USA,

      Defendants - Appellees

———————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-852

———————

Before DAVIS, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge: [*]

    Kale Flagg appeals the dismissal of his complaint against Stryker Corporation ("Stryker"), Memometal Incorporated ("Memometal") (collectively, the "Manufacturing Defendants"), and five fictitious insurance companies[1] for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Although the fictitious insurance companies remain parties in this case, there is no indication they were ever served or that they have appeared in any way. A judgment of dismissal is final and appealable under 28 U.S.C. § 1291 even if it does not dispose of claims made against a party that has neither been served nor appeared before the court. *See*

No. 14-31169

failure to state a plausible claim related to allegedly defective toe implants. Because we conclude Flagg sufficiently alleged a plausible claim under the Louisiana Products Liability Act ("LPLA"), LA. STAT. ANN. §§ 9:2800.51–9:2800.60, we REVERSE the district court's dismissal of Flagg's claim that the toe implants were defective in design, construction, or composition and REMAND for further proceedings.

I.

Flagg underwent foot surgery to install toe implants allegedly made by the Manufacturing Defendants. Less than one year after the surgery, Flagg avers that those implants broke and caused him pain and complications that resulted in multiple surgeries to remove the implants and repair the damage that ensued. Flagg alleges ongoing suffering and disfigurement from the implants, which he claims were defective and unreasonably dangerous under Louisiana law. After Flagg's suit was removed from state court, the district court granted him leave to amend his complaint against the Manufacturing Defendants.[2] The Manufacturing Defendants moved to dismiss Flagg's claims against them under Federal Rule of Civil Procedure 12(b)(6), and the district court granted that motion. Flagg timely appealed.

---

*generally Fed. Sav. & Loan Ins. Corp. v. Tullos-Pierremont*, 894 F.2d 1469, 1471–74 (5th Cir. 1990). We therefore do not mention these fictitious insurance companies again.

[2] Flagg also sued several medical providers for malpractice in installing the implants and treating him thereafter. The district court dismissed those medical defendants as improperly joined. Sitting en banc, our court ultimately affirmed that dismissal, concluding the district court properly exercised jurisdiction over the remaining Manufacturing Defendants. *See Flagg v. Stryker Corp.*, ___ F.3d ____, No. 14-31169, 2016 WL 1169067, at *1, 5–6 (5th Cir. Mar. 24, 2016) (en banc). This case was therefore returned to this panel to address the merits of the district court's dismissal of Flagg's claims against the Manufacturing Defendants. *Id.* at *5–6. We do so here without further discussion of the medical defendants or the improper joinder issue.

No. 14-31169

## II.

We review the district court's grant of a motion to dismiss de novo, accepting all well-pleaded allegations as true and viewing them in the light most favorable to the nonmovant. *See In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008). To avoid dismissal, a plaintiff must state a claim for relief that is facially plausible by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). On a motion to dismiss, when the cause of action requires specific elements to be proven, the plausibility "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).

## III.

The LPLA provides the "exclusive remedy for products liability suits" under Louisiana law. *Demahy v. Schwartz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012); *see also* LA. STAT. ANN. § 9:2800.52. In order to maintain a successful products liability action under the LPLA, a plaintiff must establish that the defendant is the manufacturer of the product; the claimant's damage was proximately caused by a characteristic of the product; this characteristic made the product unreasonably dangerous; and the claimant's damage arose from a reasonably anticipated use of the product. *Id.* § 9:2800.54(A). The Manufacturing Defendants solely challenge whether Flagg sufficiently pleaded that the toe implants were unreasonably dangerous under the LPLA. A plaintiff may establish a product was unreasonably dangerous under one of four theories: (1) the product's construction or composition is defective, (2) the

3

product's design is defective, (3) the product's warnings are inadequate, or (4) by showing a breach of express warranty. *Id.* § 9:2800.54(B). Although Flagg alleged inadequate warning and breach of express warranty, we conclude those allegations were properly dismissed by the district court as failing to state a plausible claim under the LPLA.[3] However, at this stage, we conclude Flagg's pleadings sufficiently state a claim that the toe implants were unreasonably dangerous due to alleged defects in design, construction, or composition. *See id.* §§ 9:2800.54(B), 9:2800.55–56.

In order to prove a construction or composition defect at trial, a plaintiff must show that "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." *Id.* § 9:2800.55. To prove a design defect, a plaintiff must show that "at the time the product left the manufacturer's control[,] [t]here existed an alternative design for the product that was capable of preventing the claimant's damage" and that the danger and gravity of that damage outweighed any adverse effects on the utility of the product and the burden on the manufacturer of adopting the alternative design. *Id.* § 9:2800.56.

---

[3] For his inadequate warning claim, Flagg failed to include any allegations about whether the Manufacturing Defendants failed to warn Flagg's doctor of the risk involved and whether Flagg's doctor would have used the implants if given such a warning, as required under Louisiana law. *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002) (observing that Louisiana employs the learned intermediary doctrine, such that plaintiffs in LPLA cases must show defendants failed to adequately warn treating physicians). Similarly, Flagg fails to allege what was guaranteed by the express warranty in relation to his claims that the implants were defective, and Flagg does not claim the express warranty induced Flagg or his doctor to use the device, as required. *See* LA. STAT. ANN. § 9:2800.58 (requiring that the express warranty "has induced the claimant or another person or entity to use the product"); *see also Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002) (noting this element of a breach of express warranty claim under the LPLA).

No. 14-31169

Flagg alleges his injuries occurred because defendants "manufactured and sold a defective product," i.e., toe implants, which were placed in his foot and failed. Flagg averred that the Manufacturing Defendants caused Flagg's injuries by "[m]anufacturing and selling a product which is unreasonably dangerous in construction and/or composition," as well as "in design," and that "[t]he defective condition of the implant existed at the time the product left the control of its manufacturer." Flagg also alleged in his first amended complaint that his "injuries were caused by the defective and unreasonably dangerous product manufactured and sold by [the Manufacturing Defendants,]" in the following "non-exclusive" ways:

> a) Manufacturing and selling a product which is unreasonably dangerous in construction and/or composition; particularly a different alloy other than the Memometal NiTinol would have a better fatigue life and/or product life, the body temperature activated shape memory of the alloy used interfered and negatively influenced the fatigue life and/or product life expectancy of the implant;
> b) Manufacturing and selling a product which is unreasonably dangerous in design; particularly the shape and incorrect sizing contributed to the fracture of the implant and difficulty in removal once implants broke
> . . . .
> e) Any and all other particulars which may appear through discovery and further examination of the product.

The Manufacturing Defendants argue Flagg's allegations are insufficient because they lack further details about how the implants may have deviated from specifications and performance standards or otherwise identical products and because they do not sufficiently allege an existing and non-burdensome alternative design. *Cf. id.* §§ 9:2800.55–56. Flagg contends that he already consulted with an expert and amended his complaint to include as much detail as he can supply at this stage without further discovery from the Manufacturing Defendants about the specifications, performance standards,

5

and design of the implants. While federal district courts in Louisiana have addressed this issue with conflicting results,[4] we have never squarely addressed how much detail and specificity is required to plead that a product was unreasonably dangerous under the LPLA due to defective design, construction, or composition.

We conclude that Flagg's allegations provide sufficient information to "raise a reasonable expectation that that discovery will reveal evidence" to support the Manufacturing Defendants' liability. *See In re S. Scrap Material Co.*, 541 F.3d at 587 (citation omitted). Requiring Flagg and other plaintiffs to plead extremely "detailed factual allegations" that satisfy each element of a products liability action under the LPLA creates a situation where a manufacturer will not be held liable for defective products because it has sole possession of the necessary document to ultimately prove the claim. *See Iqbal*, 556 U.S. at 678 (noting that pleadings need not contain "detailed factual allegations" (quoting *Twombly*, 550 U.S. at 555)); *see also Bertrand v. Eli Lilly & Co.*, No. 12-0853, 2013 WL 4093556, at *5 (W.D. La. Aug. 13, 2013) (noting plaintiffs in products liability suits face a likely impossible task of stating more specific allegations about manufacturing and design when the defendants have possession of the necessary information).

Flagg's complaint clearly alleges that he received toe implants manufactured by the Manufacturing Defendants that broke within months of installation, causing pain and suffering and requiring multiple surgeries to repair damage. Flagg alleges that the shape and sizing of the implants led to the implants' fracturing and caused them to be difficult to remove once broken. This constitutes an allegation of precisely how the product failed and how that

---

[4] *See, e.g.*, *Lirette v. DePuy Mitek, L.L.C.*, No. 2:13-CV-2892, 2014 WL 5445777, at *3–5 (W.D. La. Oct. 20, 2014); *Wollens v. Merck & Co, Inc.*, No. 12-1408, 2012 WL 6504210, at *2–3 (E.D. La. Dec. 13, 2012).

failure caused his injury and would support an ultimate verdict that the sizing and shape of the implants deviated from the normal specifications and performance standards, or from other identical implants manufactured by the Manufacturing Defendants.   Flagg's complaint includes more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678.

Flagg also claimed that a different alloy other than the Memometal NiTinol would have performed better and that the composition of the implant negatively influenced the performance of the implant.  This allegation supports a conclusion that the alloy used was constructed or composed in a way that deviated from specifications or performance standards.  Additionally, although not specifically designated as such in the complaint, this allegation suggests an alternative design existed which would have reduced the risks of the original product. *Cf. Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 167 (5th Cir. 2000) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." (citation omitted)).  This pleading does more than provide "labels and conclusions or a formulaic recitation of the elements." *Iqbal*, 556 U.S. at 678 (citation omitted).  Instead, Flagg's complaint provides "further factual enhancement" that creates "facial plausibility." *Id.* (citation omitted). It allows this court to "draw the reasonable inference that [the Manufacturing Defendants are] liable for" the damage Flagg suffered, due to the implants' use of a poorly-performing alloy, instead of a different metal alloy and a different shape and size to reduce the risk of malfunctioning and injury. *Id.*  Although Flagg does not plead that the alternative alloy and design were available when the implants were produced or that the danger of the damage outweighs the burden of adopting the design, those very detailed and specific allegations are not required to plead a plausible claim at this this stage, before Flagg has had

an opportunity for discovery. *See, e.g.*, *Becnel v. Mercedes-Benz USA, LLC*, No. 14-0003, 2014 WL 4450431, at *2–4 (E.D. La. Sept. 10, 2014); *McLaughlin v. GlaxoSmithKline, LLC*, No. 12-2946, 2014 WL 669349, at *4 (W.D. La. Jan. 6, 2014); *Bertrand*, 2013 WL 4093556, at *5–6; *Nelson v. Mylan Pharm., Inc.*, No. 6:10-cv-0591, 2010 WL 3339274, at *4–6 (W.D. La. Aug. 3, 2010), *report and recommendation adopted*, 2010 WL 3363039, at *1 (W.D. La. Aug. 24, 2010).

*Twombly* and *Iqbal* were designed to avoid subjecting defendants to lengthy and expensive discovery when the plaintiff is merely on a fishing expedition. *See Iqbal*, 556 U.S. at 678–80; *Twombly*, 550 U.S. at 558–59. They are not a basis to shield product manufacturers from liability. Perhaps after discovery Flagg will not prevail, but at a pre-discovery stage of this case, in an area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations, we cannot say that he is merely on a fishing expedition. *See Bertrand*, 2013 WL 4093556, at *5 ("*Twombly* and *Iqbal* were not products liability suits, and in products liability lawsuits, almost all of the evidence is in the possession of the defendant, and, therefore, it is likely impossible for plaintiffs to state more specific allegations regarding defects in manufacture and design without first having the benefit of discovery and expert analysis."). Indeed, Flagg had to retain an expert simply to plead a more detailed plausible complaint in federal court.

In this specific context, we must remember that the question at the motion to dismiss stage is not whether Flagg has *proven* the elements to succeed on a products liability claim, or even whether he has made "detailed factual allegations." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The question is whether Flagg has plausibly alleged enough information that, *with discovery*, he could prove the Manufacturing Defendants are liable under the LPLA. *See In re S. Scrap Material Co.*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556). Although Flagg's allegations are not lengthy, they

cross the threshold. We conclude Flagg's claims that the implants were defective in design, construction, or composition are sufficient to "raise [the] right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and should proceed.

## IV.

For the reasons stated, we AFFIRM the district court's conclusion that Flagg has failed to plausibly plead an unreasonably dangerous product pursuant to the LPLA under the theories of inadequate warning and breach of express warranty. We REVERSE the district court's dismissal of Flagg's claims that the implants were unreasonably dangerous under the LPLA due to defective design, construction, or composition, and REMAND the case for further proceedings consistent with this opinion.

Judge Davis concurs in the judgment only.